**In re: the MARRIAGE OF Marcia NICKELS, Appellant–Respondent,**

**and**

**George Nickels, Appellee–Petitioner.**

**No. 25A03–0501–CV–34.**

Court of Appeals of Indiana.

Sept. 30, 2005.

---

Jay T. Hirschauer, Hirschauer & Hirschauer, Logansport, for Appellant.

Jim Brugh, Logansport, for Appellee.

## OPINION

MATHIAS, Judge.

Marcia Nickels ("Wife") appeals from the Fulton Superior Court's division of property in a dissolution action filed by George Nickels ("Husband"). She raises three issues:

I. Whether the trial court erred when it adopted part of Husband's Proposed Findings of Fact and Conclusions of Law verbatim into its order;

II. Whether the trial court erred when it included the entire amount of Wife's pension in the marital estate; and,

III. Whether the trial court's valuation of several of Husband's assets constituted an abuse of discretion.

Concluding that the trial court's verbatim adoption of a portion of Husband's Proposed Findings and Conclusions is not clearly erroneous, that the trial court did not err by including Wife's pension in the martial estate, but that the trial court did abuse its discretion in valuing the assets of Husband's business, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

Wife and Husband were married on February 14, 1997. Their daughter was born on February 24, 1997. Since 1971, Wife has worked on an assembly line for Federal Mogul in Logansport. Husband is self-employed as the owner of a small engine repair business. Wife inherited a sum of $100,127 from her parents' estate prior to the couple's marriage; however the amount was not distributed until April 1999.

On April 12, 2002, Husband filed a petition for dissolution of marriage. The matter was set for a bench trial on all issues on February 28, 2003. The parties agreed to reset the final hearing for March 28, 2003. The proceeding was continued to allow time for completion of court-ordered psychological evaluations of the parties. At the final hearing, conducted on July 25, 2003, Wife requested that the trial court issue findings of fact and conclusions of law. Both parties filed Proposed Findings of Fact and Conclusions of Law.

On November 6, 2003, Husband's counsel wrote the trial court, reminding the court that the matter remained under advisement. On December 17, 2003, Husband filed a request for an immediate order regarding parenting time for the parties' daughter's Christmas vacation, pointing out that no child custody order had yet been entered. Husband filed another request for a parenting time order on January 2, 2004.

The trial court scheduled a hearing for parenting time for March 8, 2004. The hearing was then reset for May 17, 2004. On June 29, 2004, more than two years after the dissolution petition was filed, and nearly a year after the final hearing was conducted, the trial court entered an agreed order regarding custody and par-

enting time. The order granted tempo-rary custody to Wife and parenting time to Husband, but made no provision for child support.

On August 11, 2004, Wife filed a Prae-cipe for Withdrawal of Submission re-questing that the trial court judge be dis-qualified pursuant to Trial Rule 53.2. On October 7, 2004, the Indiana Supreme Court remanded jurisdiction to the trial court, and ordered that the court render a decision within thirty days. The trial court then entered its findings of fact and conclusions of law on October 21, 2004. Wife now appeals.

### Standard of Review

 Wife requested findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A),

> which prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly errone-ous." The court on appeal is to give due regard to "the opportunity of the trial court to judge the credibility of the wit-nesses." When a trial court has made special findings of fact, as it did in this case, its judgment is "clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment."

*Dunson v. Dunson,* 769 N.E.2d 1120, 1123 (Ind.2002) (internal citations omitted).

 When the trial court engages in valuing assets in the course of acting on a dissolution action, it "has broad discretion" and

> its valuation will only be disturbed for an abuse of that discretion. So long as there is sufficient evidence and reason-able inferences to support the valuation, an abuse of discretion does not occur. We will not weigh the evidence and will consider the evidence in the light most favorable to the judgment.

*Wyzard v. Wyzard,* 771 N.E.2d 754, 757 (Ind.Ct.App.2002) (citations omitted). "Al-though the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court." *Elkins v. Elkins,* 763 N.E.2d 482, 485 (Ind.Ct.App.2002) (quoting *Bizik v. Bizik,* 753 N.E.2d 762, 766 (Ind. Ct.App.2001), *trans. denied* ).

### Discussion and Decision

### I. Adoption of Husband's Proposed Findings and Conclusions

 Wife contends that the trial court erred when it adopted verbatim a signifi-cant portion of Husband's Proposed Find-ings of Fact and Conclusions of Law, and that several of the adopted findings are unsupported by the evidence in the record.

### A. *Verbatim Adoption of Proposed Findings and Conclusions*

 In its order, the trial court adopted verbatim Husband's proposed findings numbered 26 through 50 as its findings numbered 16 through 40. Appel-lant's App. pp. 228–33, 17–21. Trial Rule 52(C) encourages trial courts to request that parties submit proposed findings of fact and conclusions of law and it is not uncommon or per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the pre-vailing party. *Clark v. Crowe,* 778 N.E.2d 835, 841 n. 3 (Ind.Ct.App.2002) (citing *A.F. v. Marion County Office of Family and Children,* 762 N.E.2d 1244, 1249 (Ind.Ct. App.2002), *trans. denied* ). When a party prepares proposed findings, they "should take great care to insure that the findings are sufficient to form a proper factual ba-sis for the ultimate conclusions of the trial court." *Marathon Oil Co. v. Collins,* 744 N.E.2d 474, 477 n. 2 (Ind.Ct.App.2001) (cit-ing *Maloblocki v. Maloblocki,* 646 N.E.2d 358, 361 (Ind.Ct.App.1995)). Moreover,

"the trial court should remember that when it signs one party's findings, it is ultimately responsible for their correctness." *Id.* As noted by this court in *Clark,* we urge trial courts to scrutinize parties' submissions for mischaracterized testimony and legal argument rather than the findings of fact and conclusions of law as contemplated by the rule. 778 N.E.2d at 841 n. 3.

 We encourage such scrutiny for good reason. As our supreme court has observed, the practice of accepting verbatim a party's proposed findings of fact "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Cook v. Whitsell–Sherman,* 796 N.E.2d 271, 273 n. 1 (Ind.2003) (citing *Prowell v. State,* 741 N.E.2d 704, 708–09 (Ind.2001)). However, as the court also noted, verbatim reproductions of a party's submissions are not uncommon, as "[t]he trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning." *Prowell,* 741 N.E.2d at 708. The need to keep the docket moving is properly a high priority for our trial bench. *Id.* at 709. For this reason, the practice of adopting a party's proposed findings is not prohibited. *Id.* Thus, although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous. *See Saylor v. State,* 765 N.E.2d 535, 565 (Ind.2002) (citing *Woods v. State,* 701 N.E.2d 1208, 1210 (Ind.1998)).

The trial court here did not adopt the entirety of Husband's proposed findings and conclusions. Nor did the trial court adopt the findings by way of a one-line order, but adopted them by means of an entry that recited each finding the court adopted. *See Cook,* 796 N.E.2d at 273 n. 1. We note that the trial court also adopted fifteen of Wife's proposed findings on the issue of custody. Appellant's App. pp. 15–17, 242–44. The trial court also adopted Wife's findings numbered 16, 17, 18, and 20 as its conclusions numbered 1, 2, 3, and 5. *Id.* pp. 244–45, 21–22. We must also note the extensive delay between the time the proposed findings and conclusions were submitted and the time the court entered its order. However, under the facts and circumstances presented here, we cannot conclude that the trial court's verbatim adoption of the parties' proposed findings and conclusions was clearly erroneous.

**B.** *Findings Regarding Real Estate*

 Wife challenges two of the trial court's findings, claiming they are unsupported by the evidence in the record. The trial court found:

26. [Wife] brought her home into the marriage; it is valued at $60,000. [Husband] brought his business and the garage into the marriage; the land portion is valued at $30,000. Each then titled their individual fee in each parcel of land to a fee in the entireties. There was no mortgage against either parcel of real property.

\* \* \* \* \* \*

28. During the marriage, [Wife] received inheritance in the net amount of $100,127, which was deposited into a joint savings account with [Husband] on April 19, 1999. That joint money was then used to buy a[ ] truck ...[and] also used to buy residential real property located at 1219–1221 Jefferson Street in Rochester which has a present value of $70,000. Title to this property was tak-

en by the entireties. There is no mortgage against this parcel of land.

Appellant's App. p. 19.

Wife contends the trial court's findings that the parties' real estate was jointly titled are not supported by the evidence. Pursuant to the trial court's order, both parties filed pre-trial submissions regarding the marital estate, including descriptions of any real property and how title was held. Wife submitted the legal description of her home, stating "title held in the name of Marcia Nickels and George Nickels, husband and wife." Appellant's App. p. 149. Wife's submitted legal description of Husband's garage also stated "[T]itle held in the names of George and Marcia Nickels." Appellant's App. p. 151. Likewise, Wife's description of the property in Rochester indicated that the property was titled in both parties' names. *Id.* Husband's pre-trial submissions also described the ownership of the real property as joint. Appellant's App. p. 162. Thus, the trial court's findings that the three parcels of real property were jointly held were not clearly erroneous.

## II. Wife's Pension

■ Next, Wife contends that the trial court erroneously adopted Husband's proposed finding on the value of Wife's pension. She argues that no evidence was presented that the pension is vested. She then argues that even if the pension is vested, the trial court's valuation of the pension improperly includes amounts accrued before the marriage.

### A. *Evidence Wife's Pension Had Vested*

■ Wife contends that "there was no proper proof that the pension had vested and was a current asset." Br. of Appellant at 16. In an action for dissolution of marriage, the trial court is required to divide

the marital property in a "just and reasonable manner." Ind.Code § 31–15–7–4(b) (1998). "Property" is defined as:

[A]ll the assets of either party or both parties, including:

(1) a present right to withdraw pension or retirement benefits;

(2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

Ind.Code § 31–9–2–98(b) (1998); *Beckley v. Beckley,* 822 N.E.2d 158, 160 (Ind.2005). Thus, in order for pension benefits to be included as marital property, the benefits must not be forfeited at the termination of employment or the benefits must be vested and payable either before or after the dissolution. *Bizik v. Bizik,* 753 N.E.2d 762, 767 (Ind.Ct.App.2001), *trans. denied.*

Here, included in Wife's pre-trial submissions was a letter from her employer stating that she was credited with 32 years of "vesting service" and that if her "employment ended today, her benefit at age 65 would be $544.00 per month." Appellant's App. p. 154. In addition, at trial, Husband introduced as an exhibit a letter from an actuary who had evaluated Wife's pension describing her benefits as "nonforfeitable[.]"[1] Appellant's App. pp. 516–18. Therefore, the trial court's determination that Wife's pension benefit was vested was not clearly erroneous.

1. Wife did not object to this evidence. Tr. p. 65.

### B. *Inclusion of Wife's Entire Pension Value*

■ Wife also argues that the trial court's inclusion of the entire value of her pension, and not just that portion which accumulated during the marriage, was error. The trial court valued Wife's pension at $36,151, but noted that only $6778 of that amount had accrued during the marriage. The court then included the total value of the pension in its distribution of the marital assets.

■ All property, whether acquired before or during the marriage, is generally included in the marital estate for property division. *See* Ind.Code § 31–15–7–4(a); *Bertholet v. Bertholet,* 725 N.E.2d 487, 495 (Ind.Ct.App.2000). This " 'one pot' theory specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award." *Wyzard v. Wyzard,* 771 N.E.2d 754, 757 (Ind.Ct.App. 2002) (quoting *Coffey v. Coffey,* 649 N.E.2d 1074, 1076 (Ind.Ct.App.1995)).

■ Nevertheless, Wife contends that only the portion of the pension which accrued during the marriage should have been subject to division. Wife's argument appears to be that the trial court should have used a "coverture fraction" formula to determine how much of her pension to award to Husband.[2] However, Wife refers us to no authority standing for the proposition that a trial court must use a coverture fraction formula to distribute a pension or retirement plan. Moreover, while a trial court may set aside to one party the value of a marital asset where the other party made no contribution to its acquisition, it is not required to do so. *In re Marriage of*

*Pulley,* 652 N.E.2d 528, 530 (Ind.Ct.App. 1995), *trans. denied.*

The presumption of our dissolution statute is that "all the assets of either party or both parties" are property subject to division. The party who seeks to rebut the presumption, i.e., the party who seeks to have property not included (or at least not divided), bears the burden of demonstrating that the statutory presumption should not apply. This is so because an exclusion from the marital estate directly implicates whether the marital property will be equally divided. And our dissolution statute provides that a party seeking to rebut the presumption of equal division of marital property bears the burden of proof in doing so. *Beckley v. Beckley,* 822 N.E.2d 158, 162–63 (Ind.2005) (citations omitted).

Indiana Code section 31–15–7–5 provides that the presumption of equal division may be rebutted by relevant evidence that an equal division would not be just and reasonable. The factors a court may consider include the contribution of each spouse to the acquisition of the property, the extent to which the property was acquired by each spouse before the marriage, the economic circumstances of each spouse at the time of disposition, and the earnings or earning ability of each spouse. Ind.Code § 31–15–7–5 (1998).

While Wife presented evidence regarding the proportion of her pension benefits which accrued before the marriage, the trial court found that Wife had failed to carry her burden of rebutting the presumption of equal distribution. In doing so, the court specifically noted "[Wife's]

---

**2.** A coverture fraction formula is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses, under which the value of the pension is multiplied by a fraction—the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which the pension rights accrued. *In re Marriage of Preston,* 704 N.E.2d 1093, 1098 n. 6 (Ind.Ct. App.1999).

economic circumstances are better than [Husband's] as he continues in his self employment as she presumably continues to work another 15 or 16 years until she can retire from Federal Mogul." Appellant's App. p. 19.

Under these facts and circumstances, we conclude that the trial court did not abuse its discretion by including the entire value of Wife's pension in the marital estate.

### III. Calculation of the Marital Estate

 Wife asserts that the trial court committed error when it failed to deduct $20,000 ordered set aside for the parties' child's education. The court's order directed that "[a]s a part of the division of the marital estate, but prior to the division of the marital estate between the parties, the Court directs [Wife] to set aside $20,000 from the proceeds of the Beacon Credit Union Account ... as a college education fund for the benefit of the child." Appellant's App. p. 23. Wife does not challenge the direction to set aside the sum, but argues that the trial court improperly calculated the value of the marital estate by failing to deduct the $20,000 from her account in its calculation.

The record indicates that the trial court included the entire balance of Wife's Wabash County Farm Bureau Credit Union[3] account in Wife's assets. The trial court totaled the value of the marital assets in the possession of both parties at $273,534. The trial court then deducted the $20,000 college education fund off the top *before* dividing the balance of $253,534 equally between Husband and Wife. Thus, Wife's argument that the trial court erroneously failed to deduct the $20,000 setoff from her assets fails.

### IV. Valuation of Husband's Property

 Finally, Wife asserts that the trial court committed error when it adopted Husband's proposed schedule of marital assets, claiming the proposed schedule was not supported by the evidence. Specifically, she argues that the evidence does not support the trial court's findings that Husband's garage account is valued at $4487 and his 35–foot trailer is valued at $3500. She also asserts that the trial court failed to include the value of an air compressor among Husband's assets.

 As set forth above, we review the valuation of assets for an abuse of discretion; as such we will not reweigh the evidence and will consider the evidence in the light most favorable to the judgment. *Wyzard*, 771 N.E.2d at 757. The record before us indicates that the balance of Husband's garage checking account was $4486.79 at the time of separation. Tr. p. 100; Appellant's App. p. 498. Husband's business also had accounts receivable in the amount of $3051.09. *Id.* Thus, assets for Husband's "Business Account" were $7537.88. Appellant's App. pp. 497–98. Husband contends that the trial court "balanced" this amount with his "unspecified business debt" and his need to borrow $3000 "when she took everything." Br. of Appellee at 17 (quoting Appellant's App. pp. 425–26). However, Husband testified that he borrowed the $3000 *after* he filed the petition for dissolution. Tr. p. 116. Therefore, the trial court's valuation of Husband's "Garage Account" at $4487 is not supported by the evidence.

The record indicates that Husband testified his camper was worth "maybe thirty-five hundred [dollars], it[']s an 88 model,

---

**3.** In its Conclusions, the trial court ordered the sum set aside from "the proceeds of the Beacon Credit Union Account[.]" Appellant's App. p. 23. However, the trial court's listing of assets in the marital estate indicates that Wife's two accounts with Beacon Credit Union totaled $2674, while the Wabash County Farm Bureau Credit Union account was worth $23,823. Appellant's App. p. 24.

but it[']s in good shape." Tr. p. 123. The record also reflects that while Husband testified that he had paid less than $2000 for an air compressor, he also testified that the value of all of his tools was $15,000. Tr. pp. 396, 399. The statements Husband gave about the air compressor were in the context of a discussion of his tools. *See* Tr. pp. 396–99. Essentially, Wife asks that we reweigh the evidence, which we will not do.

■ The trial court properly valued Husband's camper and tools (including the air compressor). However, the trial court abused its discretion when it failed to include the accounts receivable from Husband's business as an asset. We therefore direct the trial court to distribute $1525.55 (half of the value of the accounts receivable from Husband's garage) to Wife.

### Conclusion

The trial court's verbatim adoption of part of Husband's Proposed Findings of Fact and Conclusions of Law was not error. The court did not abuse its discretion in its valuation of Wife's pension, nor did it fail to properly deduct the $20,000 from Wife's assets. The trial court did not abuse its discretion in its valuation of Husband's camper and tools; but did abuse its discretion when it failed to include Husband's accounts receivable as a marital asset.

Affirmed in part, reversed in part, and remanded with directions to distribute $1525.55 to Wife from Husband.

DARDEN, J., and CRONE, J., concur.