**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 05 2013, 5:47 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT – PRO SE:

**JAMES W. AVERY**
Avery Law Firm
Denver, Colorado

ATTORNEY FOR APPELLEE:

**MICHAEL G. RUPPERT**
Ruppert & Schaefer, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES W. AVERY,                          )
                                         )
    Appellant-Respondent,          )
                                         )
        vs.                 )     No.  18A05-1301-DR-28
                                         )
CYNTHIA L. (AVERY) HOWE,                 )
                                         )
    Appellee-Petitioner.           )

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-1103-DR-55

**November 5, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In the instant case, appellant-respondent James W. Avery (Husband) appeals the trial court's dissolution decree awarding him 60% of the marital estate that he had once shared with appellee-petitioner Cynthia L. (Avery) Howe, (Wife) who was awarded the remaining 40%. More particularly, Husband argues that inflammatory testimony about him visiting prostitutes resulted in Wife receiving a larger share of the marital estate. Additionally, Husband contends that the trial court erred by including property that had been acquired before the marriage and by using an inflated valuation on real property located in Colorado. Finally, Husband asserts that the trial court erred by failing to consider the tax consequences of its property distribution and by awarding Wife $15,000 in attorney fees. Finding no error, we affirm the judgment of the trial court.

FACTS

Husband and Wife began cohabitating in 2000 and married on June 26, 2004. The parties did not have an antenuptial or a prenuptial agreement.

Throughout the couple's relationship, Wife worked for Environmental Construction in Yorktown where she was paid an annual salary of $60,000 and provided a company vehicle. Wife made significant contributions to the marital estate by working full-time, providing health insurance, reducing expenses by using the company vehicle, and by assisting Husband in his law practice with bookkeeping and organizing.

Husband owned and operated a successful law practice and is licensed to practice law in Colorado, Indiana, and New York. However, Husband's income could be unpredictable; therefore, Wife was sometimes responsible for paying the monthly bills.

2

Later in the marriage, the couple's finances were exposed to extreme risk because of the large credit line from Husband's business, which was secured by the marital residence.

Despite Husband's unstable income, Wife estimated his income to be at least $500,000 per year based on her personal knowledge and statements Husband made on a dating website that were entered into evidence. Nevertheless, the trial court determined that despite Husband's "much greater" earning capacity, there was very little on which to base his income because he had not filed tax returns in several years. Appellant's App. p. 2.

At the time the couple began cohabitating, Wife owned two rental properties. Husband did not own any real property, but did have a timeshare, a BMW, a retirement account, and his law practice. During the period of cohabitation, Husband acquired property on Cheyenne Drive in Muncie, which would become the marital residence, and many vehicles. Husband brought to the marriage a $60,000 Chase brokerage account.

In September 2010, the couple purchased a residence in Evergreen, Colorado for $750,000. Husband testified that the property was purchased in a short sale. There was evidence presented that at the time of the sale, the property appraised between $940,000 and $960,000. The 2011 tax assessed value was $1,109,860. Another valuable asset in the marital estate was Husband's business account from his law practice worth $267,676.

On March 28, 2011, Wife filed a petition to dissolve the marriage. On November 9, 2011, Wife filed a motion to compel discovery, which the trial court granted, giving Husband no later than November 25 to respond. On November 28, 2011, Husband filed a

3

motion for extension of time. On December 12, 2011, the trial court held a telephone conference during which the trial court instructed Wife's counsel to submit a list of specific items being requested and directed Husband to advise the trial court how much time he needed to respond to the requests.

On January 18 and 19, 2012, the trial court issued discovery orders, including ordering Husband to respond to interrogatories and to produce documents. On April 12, 2012, Wife filed a motion for sanctions for failure to comply with the January discovery orders, a motion for enlargement of time to respond to Husband's request for discovery, and a motion to require Husband to sign IRS Form 4506. Husband filed a response, and on June 6, 2012, the trial court held a telephone conference regarding the discovery dispute. On June 20, 2012, the trial court entered its order on Wife's motion for sanctions, directing Husband to execute Form 4506, which permitted Wife to obtain tax information on Husband directly from the IRS. Husband was also required to produce certain documents, and Wife was given the option of filing another motion to compel, serving third party requests at Husband's expense, or deposing Husband at his expense.

On November 30, 2012, the trial court held a final hearing during which Wife made a request for specific findings pursuant to Trial Rule 52. During the hearing, Wife argued that Husband had dissipated assets when he made "several visits to prostitutes." Tr. p. 68. No other such reference was made by Wife, and Husband did not object to this testimony. However, Wife did testify that she had incurred $29,821.63 in attorney fees and that a portion of this was attributed to the significant discovery disputes that arose.

4

Indeed, as of the final hearing, Husband had still failed to provide sufficient information permitting Wife to calculate his personal income or the income generated by his business. Wife requested that the court order Husband to reimburse her $15,000 in attorney fees.

On December 20, 2012, the trial court entered its decree of dissolution in which the trial court dissolved the parties' marriage, found that Husband had rebutted the presumption that an equal distribution of the marital estate was reasonable and just and that he should take 60% of the marital estate and Wife should take 40%, and ordered Husband to pay $15,000 of Wife's attorney fees. Husband now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Specific findings and conclusions thereon were requested pursuant to Trial Rule 52(A). Accordingly, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings, and then, we determine whether the findings support the judgment. Troyer v. Troyer, 987 N.E.2d 1130, 1134 (Ind. Ct. App. 2013), reh'g denied. We will reverse only if the trial court's findings are clearly erroneous, or, put another way, leave us with a firm conviction that a mistake has been made. Id. Additionally, a judgment is clearly erroneous if it relies on an incorrect legal standard. Id.

### II. Property Division

Husband alleges that the 40% award of the marital estate to Wife was tainted by inflammatory testimony. Additionally, Husband argues that the trial court erred by

including property before the marriage and by using the assessed value of the Colorado property as opposed to the purchase price in valuing that property.

## A. Inflammatory Testimony

Husband claims that Wife's reference to him visiting prostitutes and dissipating assets was so inflammatory that it led to her receiving a more generous portion of the marital estate. Here, the trial court issued very detailed findings and conclusions in its decree of dissolution[1] and not one single finding mentioned Husband visiting prostitutes. Indeed, it appears that the trial court disregarded that testimony entirely. Even more compelling, the trial court found that "[Husband] did not dissipate assets." Appellant's App. p. 2. Consequently, this argument fails.

## B. Property Acquired Before the Marriage

Husband argues that the trial court erred by including property that the couple accumulated before they were married and treating it the same as the property that they accumulated after they were married. Indiana Code section 31-15-7-4 provides that in a dissolution of marriage action, the property of parties shall be divided whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

…

(3) acquired by their joint efforts.

---

[1] We commend the trial court for its meticulous findings and the careful thought put into those findings. Because of the solid foundation that the trial court has already placed, this Court can adequately address the issues more efficiently.

"This 'one pot' theory specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award." In re Marriage of Nickels, 834 N.E.2d 1091, 1098 (Ind. Ct. App. 2005). However, Indiana Code section 31-15-7-5 provides a list a factors that a court may consider to rebut the presumption that an equal division of the property is just and reasonable, one of which is the extent to which the property was acquired by each spouse before the marriage. Nevertheless, the burden is on the party who seeks to rebut the presumption that an equal division is not just and reasonable. In re Marriage of Nickels, 834 N.E.2d at 1098.

Here, the trial court determined that Husband successfully rebutted the presumption that an equal division of the marital estate was just and reasonable. Appellant's App. p. 3. Specifically, the trial court determined that the marriage was relatively short-term, the parties came into the marriage with established careers and left the marriage with those careers, one of the most valuable assets was generated by Husband's law practice, and Husband brought into the marriage a significant amount of money in his brokerage account. Id. The trial court was not required to separate from the marital pot every piece of property that was acquired before the marriage, and consequently did not err by including property that was accumulated before the couple was married.

### C. Property Value

Husband maintains that the trial court erred by using the assessed value of the Colorado property rather than the purchase price. At the outset, we note that as pointed

out by Wife, Husband's assertion is incorrect. Specifically, in the trial court's findings, it determined that "[t]he Court will use the appraisal value for the mortgage loan purposes as testified to by [Wife] on rebuttal. The actual purchase price is too low to use, because [Husband] bought the property in a short sale." Appellant's App. p. 5. Thus, the trial court did not use the assessed value; rather, it used the appraisal value.[2]

Here, Husband and Wife testified that they bought the Colorado property in a short sale transaction for $750,000. Tr. p. 105, 175. Wife testified that at the time of sale, the property was appraised between $940,000 and $960,000. Id. at 258. Thus, the trial court's valuation of the Colorado property at $940,000 was within the scope of the evidence, and this argument also fails. See Goossens v. Goossens, 829 N.E.2d 36, 38-39 (Ind. Ct. App. 2005) (holding that the trial court did not err when it valued real property within the range of the evidence presented at trial).

### III. Tax Consequences

Husband asserts that the trial court erred by failing to consider the tax consequences to him by awarding to Wife 40% of the value of the business funds and the brokerage account. Husband contends that he is liable for taxes "in the range" of $35,333 "on this pre-tax asset." Appellant's Br. p. 17.

Indiana Code section 31-15-7-7 provides that "[t]he court, in determining what is just and reasonable in dividing property under this chapter, shall consider the tax

---

[2] This Court expects accuracy in the factual assertions made by the litigants who appear before us, particularly those who are licensed to practice law in three states. The findings in the trial court's decree are abundantly clear.

8

consequences of the property disposition with respect to the present and future economic circumstances of each party." However, if no tax consequences are presented to the court, a party may not argue that the court erred by failing to consider the consequences. Hardin v. Hardin, 964 N.E.2d 247, 254 (Ind. Ct. App. 2012).

Here, Husband has failed to direct this Court to any evidence in the record regarding his tax liability as the immediate result of the trial court's property distribution. See Granger v. Granger, 579 N.E.2d 1319, 1321 (Ind. Ct. App. 1991) (stating that "[a] taxable event must occur as a direct result of the court-ordered disposition of the marital estate for the resulting tax to reduce the value of the marital estate"). Thus, the trial court could not have been required to consider tax consequences if they were not presented, and this argument fails. See Hardin, 964 N.E.2d at 254 (holding that husband invited error by failing to present evidence to the trial court regarding tax consequences).

### IV. Attorney Fees

Husband argues that the trial court erred by awarding Wife $15,000 in attorney fees. We review an award of attorney fees for an abuse of discretion. Hartley v. Hartley, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007).

Under Indiana Code section 31-15-10-1, the trial court has the authority to order one party to pay the attorney fees of the other party in a dissolution proceeding. When making such an award, the trial court must consider the resources of the parties, their economic condition, their ability to engage in gainful employment, and any other factors that affect the reasonableness of the award. Ratliff v. Ratliff, 804 N.E.2d 237, 249 (Ind.

Ct. App. 2004). The court may also consider any misconduct by one party that resulted in additional attorney fees incurred by the other party. Id.

In this case, Wife testified and submitted evidence that she earned $60,000 per year. Tr. p. 54; Appellee's App. p. 293. Wife estimated that Husband earned in excess of $500,000 per year. Tr. p. 62. Wife also testified that she had incurred around $29,000 in attorney fees. And while the trial court did not specifically find that Husband's misconduct regarding his discovery responses formed the basis of the award, the trial court was not required to make such a finding, and the record speaks volumes regarding Husband's misconduct in failing to properly respond to discovery. Appellee's App. p. 32, 61, 188. Consequently, the trial court did not err by awarding Wife $15,000 in attorney fees.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.